UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - -

UNITED STATES OF AMERICA,       .  Case No. 1:09-cr-147
                                .
          Plaintiff,            .
                                .  *Arraignment and Plea*
     - v -                      .
                                .  Tuesday, October 13, 2009
FRANK G. LARSON,                .  10:00 AM
                                .
          Defendant.            .  Cincinnati, Ohio
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE HERMAN J. WEBER, SENIOR JUDGE


For the Plaintiff:     KEVIN C. CULUM, ESQ.
                       MACHELLE L. JINDRA, ESQ.
                       United States Department of Justice
                       Antitrust Division
                       Carl B. Stokes U.S. Court House
                       801 West Superior Avenue, 14th Floor
                       Cleveland, Ohio  44113-1857

For the Defendant:     WILLIAM MICHAEL, JR., ESQ.
                       Dorsey & Whitney LLP
                       50 South Sixth Street
                       Suite 1500
                       Minneapolis, Minnesota  55402-1498

Also present:          Laurie Cooke, Pretrial Services
                       Laura S. Jensen, Probation Officer

Law Clerk:             Amy Peters Thomas, Esq.

Courtroom Deputy:      Darlene Maury

Court Reporter:        Luke T. Lavin, RDR, CRR
                       838 Potter Stewart U.S. Courthouse
                       100 East Fifth Street
                       Cincinnati, Ohio  45202

*Proceedings recorded in stenotype;*
*transcript prepared by computer.*

<u>P R O C E E D I N G S</u>

1
2    (In open court at 10:00 AM.)

3         THE COURT:  Proceed, Ms. Maury.

4         COURTROOM DEPUTY:  Judge, on the docket this morning

5    is Criminal Action 09-147, United States of America versus

6    Frank G. Larson.  Appearing on behalf of the government is

7    Kevin Culum and Machelle Jindra.  Appearing on behalf of the

8    defense is William Michael, and the defendant is present in the

9    courtroom.

10        THE COURT:  Mr. Michael, will you introduce yourself

11   to the Court and explain your presence.

12        MR. MICHAEL:  Yes, Judge.

13    Thank you, Your Honor.  Good morning.  My name is William

14   Michael.  I represent Mr. Larson.  Your Honor, first I would

15   just point out that I have not yet been able to file the pro

16   hac vice papers.  We're waiting on the certificates of good

17   standing from the states of Florida and Minnesota.  I would

18   represent to the Court that I am in good standing in both of

19   those states.

20    Mr. Larson is present and has read through the paperwork

21   and is ready to proceed, Your Honor.

22        THE COURT:  Let's see.  Are you admitted to a district

23   court somewhere?

24        MR. MICHAEL:  I am, Judge.  I'm admitted to the

25   District Court of Minnesota.  I've also appeared in the

```
 1   Southern District of New York, the Eastern District of New

 2   York, the Southern District of Florida, the District of North

 3   Dakota, the District of Utah, the Northern District of

 4   California, and several states and perhaps other districts.

 5            THE COURT:  Well, I appreciate that.  That gives me a

 6   little solace.

 7            MR. MICHAEL:  All right.

 8            THE COURT:  Thank you.

 9            MR. MICHAEL:  And I apologize, Judge, for the

10   paperwork not being in on time.

11            THE COURT:  All right.

12      Let's see.  Are you Frank G. Larson, sir?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Are you the defendant in this case?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  Are you represented by a lawyer?

17            THE DEFENDANT:  Yes, I am.

18            THE COURT:  And what's your lawyer's name?

19            THE WITNESS:  Bill Michael.

20            THE COURT:  Mr. Michael, have you explained to Mr.

21   Larson his rights to have this matter considered by the grand

22   jury?

23            MR. MICHAEL:  I have, Judge.

24            THE COURT:  And do you have any advice for him in that

25   regard?
```

1          MR. MICHAEL:  I do, Judge.  We have agreed to waive

2     the indictment.  We have the forms here ready to be signed to

3     waive indictment by a grand jury and to allow the United States

4     Department of Justice to proceed by way of Information on this

5     count.

6          THE COURT:  And do you feel the client's acting in his

7     best interest in proceeding in this manner?

8          MR. MICHAEL:  I do, Judge.

9          THE COURT:  Thank you.

10     Mr. Larson, I want you to please understand that by waiving

11     your right to have the matter considered by the grand jury,

12     you're not giving up any of your other constitutional rights.

13     You have a right to plead not guilty, be tried by a jury, be

14     represented by a lawyer throughout the proceedings, face the

15     prosecution witnesses, compel witnesses to attend and testify

16     in your behalf, and the United States must prove to a jury of

17     12 individuals beyond a reasonable doubt certain things that

18     you are guilty of this crime.  And you can't be put on trial

19     here in this court unless you decide to waive your right to

20     have a grand jury consider the case.

21     Now, in order so that I can be assured that you know what

22     is charged, it's necessary that, I believe, at this time that

23     we read together the Information.

24     And in that regard, Mr. Culum, do you have a motion to

25     make?

1          MR. CULUM:  Yes, Your Honor.  I would like to file a

2      motion to unseal the Information and all papers along with it.

3          And any other motion I need to file?

4          THE COURT:  That's the magic motion.

5          MR. CULUM:  Okay.  I earlier gave it to Darlene.

6          THE COURT:  I had it in front of me.  I just wanted to

7      see what you were up to.

8          The Court has ordered the unsealing of the documents, and

9      they're all a matter now of public record as we go through this

10     matter.

11         MR. CULUM:  Thank you, Your Honor.

12         THE COURT:  And if you would please present to the

13     record the Information at this time.

14         MR. CULUM:  Thank you, Your Honor.

15         THE COURT:  And, Mr. Larson, please listen as he does

16     so.  I may ask some questions about it.  And if you have any

17     questions during this proceedings, please ask them; ask them

18     directly of me.  And if you're concerned about addressing me

19     directly, ask Mr. Michael, and he'll be glad to address me on

20     your behalf.

21         THE DEFENDANT:  Okay.

22         THE COURT:  Because it's most important that you and I

23     understand what's going on here, and that's why it's necessary

24     that I be assured that you do understand.

25         THE DEFENDANT:  Okay.

1          THE COURT:  Proceed, sir.

2          MR. CULUM:  Thank you, Your Honor.

3      May I sit while I read?

4          THE COURT:  Go ahead.

5          MR. CULUM:  Okay.

6      The Information is entitled "United States of America v.

7  Frank Larson."  It is entitled also a "Conspiracy To Restrain

8  Trade," in violation of 15 U.S.C. Section 1.

9      The United States of America, acting through its attorney,

10  charges:

11      Paragraph 1.  Frank G. Larson is hereby made a defendant on

12  the charge stated below.

13      Paragraph 2.  Beginning at least as early as March 1st,

14  2005, and continuing until at least July 17th, 2007, the exact

15  dates being unknown to the United States, the defendant and

16  co-conspirators entered into and engaged in a conspiracy to

17  suppress and eliminate competition by allocating packaged-ice

18  customers in southeastern Michigan and the Detroit, Michigan,

19  metropolitan area.  The charged conspiracy unreasonably

20  restrained interstate trade and commerce, in violation of

21  Section 1 of the Sherman Act, 15 U.S.C. Section 1.

22      Paragraph 3.  The charged conspiracy consisted of a

23  continuing agreement, understanding and concert of action among

24  the defendant and co-conspirators, the substantial terms of

25  which were to allocate packaged-ice customers in southeastern

1   Michigan and the Detroit, Michigan, metropolitan area.

2       Subheading II, the Means And Methods Of The Conspiracy.

3       Paragraph 4.  For the purposes of forming and carrying out

4   the charged conspiracy, the defendant and co-conspirators did

5   the following things, among others:

6       (a) participated in conversations to discuss packaged-ice

7   customers in southeastern Michigan and the Detroit, Michigan,

8   metropolitan area;

9       (b) agreed during those conversations to allocate packaged-

10  ice customers in southeastern Michigan and the Detroit,

11  Michigan, metropolitan area;

12      (c) exchanged information during those conversations for

13  the purpose of monitoring and enforcing adherence to the

14  agreements to allocate customers in southeastern Michigan and

15  the Detroit, Michigan, metropolitan area; and

16      (d) refrained from competing for packaged-ice customers

17  that were so allocated.

18      III.  Defendant And Co-Conspirators.

19      Paragraph 5.  During the period covered by this

20  Information, the defendant was employed by Artic Glacier

21  International Inc., which will be referred to as Artic Glacier,

22  a corporation organized and existing under the laws of the

23  state of Delaware, which does business in multiple states, with

24  its principal place of business in St. Paul, Minnesota.  During

25  the period, the defendant was most recently employed by Artic

1   Glacier as its executive vice president of operations.

2   Paragraph 6.  Various individuals and corporations, not

3   made defendants in this Information, participated as

4   co-conspirators in the offense charged and performed acts and

5   made statements in furtherance of it.

6   Paragraph -- or subpoint IV, Trade And Commerce.

7   Paragraph 7.  During the period covered by this

8   Information, the defendant's employer and its co-conspirators:

9   (1) manufactured packaged ice; (2) distributed packaged ice to

10  retailers in southeastern Michigan and the Detroit, Michigan,

11  metropolitan area; and (3) caused packaged ice to be purchased

12  from, sold to, or distributed from or to individuals or

13  companies located inside and outside of southeastern Michigan

14  and the Detroit, Michigan, metropolitan area.

15  Paragraph 8.  During the period covered by this

16  Information, substantial quantities of packaged ice

17  manufactured and sold by the defendant was shipped across state

18  lines in a continuous and uninterrupted flow of interstate

19  trade and commerce.

20  9.  The business activities of the defendant and

21  co-conspirators that are subject of this Information were

22  within the flow of, and substantially affected, interstate

23  trade and commerce.

24  Venue.

25  Paragraph 10.  The conspiracy charged in this Information

1    was formed and carried out within the Southern District of

2    Ohio, Western Division.  At least one of the conspiratorial

3    discussions described above took place in Cincinnati, Ohio,

4    which is located within the Southern District of Ohio.  Acts in

5    furtherance of this conspiracy were carried out within the five

6    years preceding the filing of this Information.

7        All in violation of Title 15, United States Code, Section

8    1.

9        And the Information is signed by the assistant attorney

10   general, the deputy assistant attorney general, the director of

11   criminal enforcement, the chief of our office, and myself.

12           THE COURT:  Mr. Michael, have you explained to your

13   client this Information and the charge contained therein?

14           MR. MICHAEL:  I have, Judge.

15           THE COURT:  Do you have any questions about this

16   proceeding at this time?  And all we're talking about now is

17   whether you will present your case to a grand jury.

18           THE DEFENDANT:  I don't have any questions.

19           THE COURT:  All right.  If it is your desire -- and do

20   you have any questions about the Information?

21           THE DEFENDANT:  No.

22           THE COURT:  If it's your desire to give up your right

23   to have the matter go immediately before this Court and give up

24   your right to waive the consideration by the grand jury, you

25   may sign the written waiver that's there before you.

1    And please explain it to him, Mr. Michael.

2          MR. MICHAEL:  Yes, Judge.  We have previously.

3          THE COURT:  Let the record show the trial judge

4    observes the defendant signing the document here in open court.

5          MR. MICHAEL:  Judge, for the record, I've signed it as

6    well.

7          THE COURT:  Any questions, Mr. Larson?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  And this is what you wish to do?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  I'll accept the waiver.  And this is your

12   signature on the document?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  I'll accept the waiver and will order the

15   Information filed as the charging document in this case.

16      Mr. Michael, how do you plead to the charge in this case?

17   Or I'm sorry.  Mr. Larson.

18         MR. MICHAEL:  Not guilty.

19         THE COURT:  Mr. Larson, how do you plead to the charge

20   in this case?

21         THE DEFENDANT:  I plead guilty, sir.

22         THE COURT:  Before I can accept your plea of guilty, I

23   must determine that it is made voluntarily, with an

24   understanding of the nature of the charge and the consequences

25   of your plea.  By offering to plead guilty, you do give up some

1   of your constitutional rights, and that giving up must be an

2   intentional giving up of rights and privileges that you now

3   have.

4        Please understand that I need not accept your plea of

5   guilty unless satisfied of your guilt and that you fully

6   understand your rights.  In order to do this, I must ask you

7   some questions.

8                THE DEFENDANT:  Yes, sir.

9                THE COURT:  Before I do, it's necessary that you

10  obligate yourself to tell the truth.  Once having been sworn,

11  your answers to my questions will be subject to the penalties

12  of perjury, of making a false statement, or possibly contempt

13  of court if you do not answer truthfully.

14       Are you willing to accept the obligation to tell the truth?

15               THE DEFENDANT:  Yes, sir, I am.

16               THE COURT:  Swear the witness.

17               COURTROOM DEPUTY:  Mr. Larson, raise your right hand.

18       (The defendant was duly sworn by the courtroom deputy.)

19               COURTROOM DEPUTY:  Thank you.  Be seated.

20               THE COURT:  Mr. Larson, how old are you, sir?

21               THE DEFENDANT:  48.

22               THE COURT:  And how much education do you have?

23               THE DEFENDANT:  I went to Gustavus Adolphus College.

24  I finished four years.  I'm one degree short of my bachelor's.

25               THE COURT:  We're conversing in the English language?

1       THE DEFENDANT:  Yes, sir.

2       THE COURT:  Can you understand me?

3       THE DEFENDANT:  Yes, sir, I can.

4       THE COURT:  I can understand you.

5       THE DEFENDANT:  (Nods head up and down.)

6       THE COURT:  Have you taken any narcotic drugs,
7  medicine or pills, or drunk any alcoholic beverages in the past
8  24 hours?

9       THE DEFENDANT:  No, sir.

10       THE COURT:  Mr. Michael, do you have any question or
11  any doubt as to the defendant's competency to plead at this
12  time?

13       MR. MICHAEL:  I do not, Judge.

14       THE COURT:  Mr. Larson, just a few minutes ago we read
15  together the charge in this case, the Information.  Do you
16  understand the nature and meaning of this charge?

17       THE DEFENDANT:  Yes, I do, sir.

18       THE COURT:  Have you told your lawyer everything you
19  know about this case?

20       THE DEFENDANT:  Yes, I have.

21       THE COURT:  Do you believe your lawyer is fully
22  informed about the facts and circumstances on which this charge
23  is based?

24       THE DEFENDANT:  Yes, I do.

25       THE COURT:  Has your lawyer fully informed counsel and

1    advised you on the nature and meaning of this charge?

2            THE DEFENDANT:  Yes, he has.

3            THE COURT:  Now, before you can be found guilty of

4    this charge, the United States must prove certain things or

5    elements, as we call them, and they must prove them beyond a

6    reasonable doubt to a jury of 12 individuals that we'll pick at

7    random.  You and I will help select them, and then they must be

8    convinced beyond a reasonable doubt of your guilt and that you

9    committed these elements.

10        The elements for conspiracy to restrain trade, in violation

11   of Section 1 of the Sherman Act, are -- and they must be

12   proved, as I said, beyond a reasonable doubt -- one, that the

13   conspiracy, that is, the agreement or understanding described

14   in the Information was knowingly formed and was existing at or

15   about the time alleged, which was, as we recall, March 1, 2005,

16   until and at least July 17th, 2007, and that one of the

17   agreements or meetings or one of the incidents occurred here in

18   the Southern District of Ohio.

19       And the Southern District of Ohio is the southern half of

20   Ohio.  If you would draw a line from the east to the west

21   corner just north of Columbus, and the land south of that would

22   be the Southern District of Ohio, to the Ohio River.  Now,

23   Cincinnati, Hamilton County, Butler County, Hamilton city,

24   Lebanon city are all in the Southern District of Ohio, for your

25   information.

1    Further, the next one is that you knowingly became a member

2    of the conspiracy, agreement or understanding as charged and

3    that the conspiracy constituted an unreasonable restraint of

4    interstate commerce and that the offense was carried out in

5    part in the Southern District of Ohio within the five years

6    preceding the filing of the Information.

7        Now, do you understand that, if you plead guilty, you will

8    admit beyond a reasonable doubt that you did these elements or

9    things?

10            THE DEFENDANT:  Yes, sir, I do.

11            THE COURT:  And that you committed the facts that were

12   alleged and actions that were alleged in the Information?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Now, do you know what the maximum possible

15   penalty for this offense is?

16            THE DEFENDANT:  I recall, I believe, 12 to 18 months.

17   Is that --

18            THE COURT:  Well, you evidently have discussed the

19   matter with your attorney and you have jumped to the Guideline

20   determination.

21            THE DEFENDANT:  I apologize.

22            THE COURT:  That's all right.  No, I'm glad to know

23   that you've got some target in your mind.

24       But so we understand each other, and since the Guidelines

25   are advisory only --

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  -- it's well you understand what the

3    maximum penalty is.  And the maximum penalty is up to ten years

4    in prison; up to a million dollar fine, or two times the gross

5    pecuniary loss or gain; three years of supervised release; a

6    hundred dollar special assessment; and restitution.

7        Now, the importance of supervised release is this, that at

8    the time of sentencing, if you're sentenced to the

9    penitentiary, you will also be assigned a period of supervised

10   release.  At the time of sentencing, conditions will be placed

11   on your conduct during the term of that supervised release.  If

12   you should violate the terms of your supervised release, those

13   conditions, you could be returned to the penitentiary for a

14   period of time, which it could be as much as two years and,

15   under certain circumstances, even maybe longer.  So that when

16   you're talking or thinking about what we're doing here today,

17   under the worst set of circumstances you might spend at

18   least -- or could spend 12 years in the penitentiary.

19       Do you understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Now, do you understand that, if I would so

22   choose, that after I accept your plea of guilty I could

23   sentence you to that maximum penalty?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  Now, you are, from what you've told me,

1   aware that the Sentencing Guidelines apply to your case, and

2   they are a very important consideration that we must discuss

3   fully at the time of sentencing.  However -- and I need to make

4   you aware that there is no provision for parole under the

5   Sentencing Reform Act.  Do you understand?

6           THE DEFENDANT:  I'm not sure I --

7           MR. MICHAEL:  Could I have a moment, Your Honor?

8           THE COURT:  Yes.

9      (Mr. Michael and the defendant confer privately.)

10          THE DEFENDANT:  Mr. Michael explained it to me.  I do

11  understand.

12          THE COURT:  In other words, what happens now under the

13  law, that the sentence I impose is the sentence that you'll

14  serve, and the only respite would be time off for what good

15  behavior the Bureau of Prisons might give you.

16          THE DEFENDANT:  Okay.

17          THE COURT:  That you would earn.

18    And do you understand that, despite the Sentencing

19  Guidelines, that the Court can impose a sentence that is more

20  severe or less severe than the Guidelines?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And do you understand that, under certain

23  circumstances, either you or the United States may appeal the

24  sentence imposed?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And there are other collateral

2    consequences, some of which are you might lose your right to

3    vote.  You will lose the right to possess a firearm.  You may

4    lose your obligation to serve on a jury duty or hold public

5    office.

6       Are you an American citizen?

7          THE DEFENDANT:  Yes, sir, I am.

8          THE COURT:  Please understand that, after you are

9    sentenced, you will have no right to withdraw your guilty plea.

10          THE DEFENDANT:  I understand.

11          THE COURT:  Now, the obligation that we have under the

12   instructions from Congress, which are set forth in Title 18,

13   United States Code, Section 3553 are these, or is this,

14   really:  that it's our duty, or my duty with your help, to

15   determine a sentence that is sufficient but not greater than

16   necessary to vindicate the desires of Congress in the

17   sentencing which are set forth in this section.

18      One of those items is the Sentencing Guidelines, which are

19   advisory.  The other considerations that we must discuss and

20   determine are the nature and circumstances of the offense, your

21   history and characteristics, the need for the sentence imposed

22   to reflect the seriousness of the offense, to promote respect

23   for the law, and to provide just punishment for the offense, to

24   afford adequate deterrence to criminal conduct generally, to

25   protect the public from further crimes you may commit, to

1   provide you with any needed educational or vocational training,

2   medical care, or other correctional treatment, in the most

3   effective manner, the kinds of sentences available and the

4   kinds of sentences that are provided by the applicability of

5   the Sentencing Guidelines.

6      Now, do you understand that we will consider all those

7   elements at the time of sentencing and that your sentence, the

8   bottom line, that it must be sufficient but not greater than

9   necessary to accomplish the purpose Congress has set forth for

10   us to follow and to achieve?

11         THE DEFENDANT:  (Nods head up and down.)

12         THE COURT:  Now, since you know the maximum penalty

13   for the offense, the considerations that will be deciding

14   factors in the sentence, do you still wish to plead guilty?

15         THE DEFENDANT:  Yes, sir, I do.

16         THE COURT:  Now, do you understand that if I accept

17   your plea of guilty, I may or may not place you on probation?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  I advise you that, under the Constitution

20   and laws of the United States, you have the right to plead not

21   guilty.  You have the right to be tried by a jury, and at such

22   a speedy and public trial you would have the right to the

23   assistance of a lawyer, the right to confront and cross-examine

24   witnesses against you, and the right not to be compelled to

25   incriminate yourself.

1       At such trial you would be presumed innocent until such

2   time, if ever, as the government established your guilt by

3   legal evidence beyond a reasonable doubt.  At such trial you

4   would be entitled to compulsory process, to call witnesses on

5   your behalf.

6       Do you understand --

7               THE DEFENDANT:  Yes, I do.

8               THE COURT:  -- that if you plead guilty, you give up

9   all these rights that I have mentioned?

10              THE DEFENDANT:  Yes, I do.

11              THE COURT:  Do you understand that if you plead

12  guilty, there will not be a further trial of any kind in your

13  case, so that by pleading guilty you are giving up the right to

14  a trial?

15              THE DEFENDANT:  Yes, I do.

16              THE COURT:  Do you understand that if your plea of

17  guilty is accepted, the judge can impose the same penalty as

18  though you pled not guilty, stood trial, and had been convicted

19  by a jury?

20              THE DEFENDANT:  Yes, I do.

21              THE COURT:  If you plead guilty, do you understand

22  that there will also have to -- you will also have to give up

23  your right not to incriminate yourself since I will have to ask

24  questions about what you did in order to satisfy me that you

25  are guilty as charged and you will have to acknowledge your

1    guilt?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Are you willing to give up your right to a

4    trial and the other rights I have just discussed?

5              THE DEFENDANT:  Yes, sir, I am.

6              THE COURT:  Proper plea agreements are permissible.

7    However, you and the lawyers have a duty to state into the

8    record the terms of any plea agreement and any agreement that

9    you may have.

10        It's my understanding that you have entered into a plea

11   agreement in this case; is that correct?

12             THE DEFENDANT:  That's correct, sir.

13             THE COURT:  I'm going to ask Mr. Culum to put the plea

14   agreement into the record.  Please follow along as he does so,

15   because after he has completed his presentation, I will ask you

16   some questions about the plea agreement.

17             THE DEFENDANT:  Okay.

18             THE COURT:  Proceed, sir.

19             MR. CULUM:  Thank you, Your Honor.

20        The plea agreement is entitled "United States of America v.

21   Frank G. Larson."  Preliminary words:  The United States of

22   America and Frank G. Larson, the defendant, hereby enter into

23   the following plea agreement pursuant to Rule 11(c)(1)(B) of

24   the Federal Rules of Criminal Procedure:

25        Paragraph 1, the Rights Of Defendant.  The defendant

1  understands his rights:

2      (a) to be represented by an attorney;

3      (b) to be charged by Indictment;

4      (c) to plead not guilty to any criminal charge brought

5  against him;

6      (d) to have a trial by jury, at which he would be presumed

7  not guilty of the charge and the United States would have to

8  prove every essential element of the charged offense beyond a

9  reasonable doubt for him to be found guilty;

10     (e) to confront and cross-examine witnesses against him and

11 to subpoena witnesses in his defense at trial;

12     (f) not to be compelled to incriminate himself;

13     (g) to appeal his conviction, if he is found guilty; and

14     (h) to appeal the imposition of sentence against him.

15     Agreement To Plead Guilty And Waive Certain Rights.

16     Paragraph 2.  The defendant knowingly and voluntarily

17 waives the rights set out in paragraph 1(b) through (h) above.

18 The defendant also knowingly and voluntarily waives the right

19 to file any appeal, any collateral attack, or any other writ or

20 motion including, but not limited to, an appeal under 18 U.S.C.

21 Section 3742, or a motion under 28 U.S.C. Section 2241 or 2255,

22 that challenges the sentence imposed by the Court if that

23 sentence is consistent with the Guideline calculations

24 described in paragraph 8 of this plea agreement.  This

25 agreement does not affect the rights or obligations of the

1  United States as set forth in 18 U.S.C. Section 3742(b).

2  Nothing in this paragraph, however, shall act as a bar to the

3  defendant perfecting any legal remedies he may otherwise have

4  on appeal or collateral attack respecting the claims of

5  ineffective assistance of counsel or prosecu-- prosecutorial

6  misconduct.

7      I have difficulty saying that.

8      Pursuant to Federal Rule of Criminal Procedure 7(b), the

9  defendant will waive indictment and plead guilty at an

10  arraignment to a one-count Information to be filed in the

11  United States District Court for the Southern District of Ohio.

12  The Information will charge the defendant with participating in

13  a conspiracy to suppress and eliminate competition by agreeing

14  with other packaged-ice manufacturers to allocate customers in

15  southeastern Michigan and the Detroit, Michigan, metropolitan

16  area, beginning at least as early as March 1st, 2005, and

17  continuing until at least July 17, 2007, in violation of the

18  Sherman Antitrust Act, 15 U.S.C. Section 1.

19      Paragraph 3.  The defendant, pursuant to the terms of this

20  plea agreement, will plead guilty to the criminal charge

21  described in paragraph 2 above and will make a factual

22  admission of guilt to this Court, in accordance with Federal

23  Rules of Criminal Procedure 11, as set forth in paragraph 4

24  below.  The United States agrees that, at the arraignment, it

25  will stipulate to the release of the defendant on his personal

1  recognizance, pursuant to 18 U.S.C. Section 3142, pending the

2  sentencing hearing in this case.

3       Factual Basis For The Offense Charged.

4       Paragraph 4.  Had this case gone to trial, the United

5  States would have presented evidence sufficient to prove the

6  following facts:

7       (a) For purposes of this plea agreement, the relevant

8  period is that period beginning at least as early as March 1st,

9  2005, and continuing until at least July 17th, 2007.  During

10 the relevant period, the defendant was employed by Artic

11 Glacier International Inc., "Artic Glacier," a corporation

12 organized and existing under the laws of the state of Delaware,

13 which does business in multiple states, with its principal

14 place of business in St. Paul, Minnesota.  During the relevant

15 period, the defendant was most recently employed by Artic

16 Glacier as its executive vice president of operations.  During

17 the relevant period, Artic Glacier was a producer of packaged

18 ice in multiple states and was engaged in the sale of packaged

19 ice.  Packaged ice is marketed as a high-grade ice for human

20 consumption and is sold in varying sizes, blocks, big bags, and

21 small bags.

22      (b) During the relevant period, the defendant participated

23 in a conspiracy to allocate customers of packaged ice sold in

24 southeastern Michigan and the Detroit, Michigan, metropolitan

25 area.  In furtherance of the conspiratorial activity, the

1   defendant or his subordinates engaged in discussions with

2   representatives of other packaged-ice producers.  During these

3   discussions, agreements were reached to allocate customers of

4   packaged ice to be sold in southeastern Michigan and the

5   Detroit, Michigan, metropolitan area.

6      (c) During the relevant period, Arctic Glacier's sales of

7   packaged ice affecting customers totaled over $10 million.

8      (d) During the relevant period, packaged ice sold by one or

9   more of the conspirator firms, and equipment and supplies

10  necessary to the production and distribution of packaged ice,

11  as well as payments for packaged ice, traveled in interstate

12  commerce.  The business activities of the defendant's employer

13  and its co-conspirators in connection with the production and

14  sale of packaged ice affected by this conspiracy were within

15  the flow of, and substantially affected, interstate trade and

16  commerce.

17     (e) Acts in furtherance of this conspiracy were carried out

18  within the Southern District of Ohio, Western Division.  At

19  least one of the conspiratorial discussions described above

20  took place in Cincinnati, Ohio, which is located within the

21  Southern District of Ohio.

22     Possible Maximum Sentence.

23     Paragraph 5.  The defendant understands that the statutory

24  maximum penalty which may be imposed against him upon

25  conviction for a violation of Section 1 of the Sherman Act is:

1   (a) a term of imprisonment for ten years, 15 U.S.C. Section

2   1;

3   (b) a fine in an amount equal to the greatest of (1) 1

4   million, (2) twice the gross pecuniary gain the conspirators

5   derived from the crime, or (3) twice the pecuniary loss caused

6   to the victims of the crime by the conspirators, 15 U.S.C.

7   Section 1, 18 U.S.C. Section 3571(b) and (d); and

8   (c) a term of supervised release of three years following

9   any term of imprisonment.  If the defendant violates any

10  condition of supervised release, the defendant could be

11  required to serve up to two years in prison, 18 U.S.C. Section

12  3559(a)(3), 18 U.S.C. Section 3583(b)(2) and (e)(3), and the

13  United States Sentencing Guidelines Section 5D1.2(a)(2).

14  Paragraph 6.  In addition, the defendant understands that:

15  (a) pursuant to U.S.S.G. 5E1.1 or 18 U.S.C. Section

16  3663(a)(3) or 3583(d), the Court may order him to pay

17  restitution to the victims of the offense; and

18  (b) pursuant to 18 U.S.C. Section 3013(a)(2)(A), the Court

19  is required to order the defendant to pay a $100 special

20  assessment upon conviction for the charged crime.

21  The Sentencing Guidelines.

22  Paragraph 7.  The defendant understands that the Sentencing

23  Guidelines are advisory, not mandatory, but that the Court must

24  consider the Guidelines in effect on the day of sentencing,

25  along with other factors set forth in 18 U.S.C. Section

1   3553(a), in determining and imposing sentence.  The defendant

2   understands that the Guidelines determination will be made by

3   the Court by a preponderance of the evidence standard.  The

4   defendant understands that although the Court is not ultimately

5   bound to impose a sentence within the applicable Guidelines

6   range, its sentence must be reasonable based upon consideration

7   of all relevant sentencing factors set forth in 18 U.S.C.

8   Section --

9           THE COURT:  I want to just interrupt then.  The duty

10  of the District Court, which is me, is to impose a sentence

11  that is sufficient but not greater than necessary to effect the

12  terms of the statute.  It's up to the Sixth Circuit Court of

13  Appeals to determine whether that sentence is reasonable.

14          THE DEFENDANT:  Okay.

15          THE COURT:  So I point that out now so that you'll

16  understand the purpose that you and I have at the time of

17  sentencing.

18          THE DEFENDANT:  Okay.

19          THE COURT:  Proceed.

20          MR. CULUM:  Thank you, Your Honor.

21      Pursuant to United States Sentencing Guideline Section

22  1B1.8, the United States agrees that self-incriminating

23  information that the defendant provides to the United States

24  pursuant to this plea agreement will not be used to increase

25  the volume of affected commerce attributable to the defendant

1   or in determining the defendant's applicable Guideline range,

2   except to the extent provided in United States Sentencing

3   Guideline Section 1B1.8(b).

4        Paragraph 8.  Pursuant to United States Sentencing

5   Guideline Section 6B1.4, the United States and the defendant

6   enter into the following stipulations:

7        (a) The base offense level for the offense to which the

8   defendant is pleading guilty, as established by the United

9   States Sentencing Guidelines Section 2R1.1(a), is 12.

10       (b) The volume of commerce attributable to the defendant

11   within the meaning of the United States Sentencing Guideline

12   Section 2R1.1(b)(2) is more than 10 million but less than 40

13   million, which increases the offense level by four.

14       (c) For purposes of United States Sentencing Guidelines

15   Section 3E1.1, a three-level reduction of the offense level for

16   the defendant's acceptance of responsibility is appropriate.

17   However, should the United States obtain or receive additional

18   evidence or information prior to sentencing that, in its sole

19   discretion, it determines to be credible and materially in

20   conflict with this stipulation, then the United States shall no

21   longer be bound by this stipulation.

22       (d) Based on the foregoing, defendant's adjusted offense

23   level for the offense to which he is pleading guilty is 13.

24   The Guidelines incarceration range for offense level 13 is 12

25   to 18 months' imprisonment.  The defendant's appropriate

1    Guidelines fine range is governed by 2R1.1(c)(1).

2              THE COURT:  I think that is really (c)(1); it's not

3    1(c)(1).

4              MR. CULUM:  You may be correct, Your Honor.

5              THE COURT:  I am.

6              MR. CULUM:  You are correct, Your Honor.  Excuse me.

7    I am incorrect; you are correct.  I apologize for the mistake.

8         Okay.  Paragraph 9.  Sentencing Agreement.  The defendant

9    understands that the sentence to be imposed on him is within

10   the sole discretion of the sentencing judge.  The United States

11   cannot and does not make any promises or representations as to

12   what sentence he will receive and is free to recommend any

13   specific sentence to the Court.  However, the United States

14   will inform the probation office and the Court of (a) this

15   agreement; (b) the nature and extent of the defendant's

16   activities with respect to this case and all other activities

17   of the defendant which the United States deems relevant to

18   sentencing; and (c) the nature and extent of the defendant's

19   cooperation with the United States.  In so doing, the United

20   States may use any information it deems relevant, including

21   information provided by the defendant both prior and subsequent

22   to the signing of this agreement.  The United States reserves

23   the right to make any statement to the Court or the probation

24   office concerning the nature of the criminal violation charged

25   in the Information, the participation of the defendant therein,

1   and any other facts or circumstances that it deems relevant.

2   The United States also reserves the right to comment on or to

3   correct any representation made by or on behalf of the

4   defendant, and to supply any other information that the Court

5   may require.

6       10.  If the United States determines that the defendant has

7   provided substantial assistance in any investigation or

8   prosecution in the packaged-ice industry, and has otherwise

9   fully complied with all the terms of this plea agreement, it

10  will file a motion, pursuant to United States Sentencing

11  Guideline 5K1.1, advising the sentencing judge of all relevant

12  facts pertaining to that determination and requesting the Court

13  to sentence the defendant in light of the factors set forth in

14  United States Sentencing Guideline Section 5K1.1(a)(1) through

15  (5).  The defendant acknowledges that the decision whether he

16  has provided substantial assistance in any investigation or

17  prosecution of the packaged-ice industry and has otherwise

18  complied with the terms of this plea agreement is within the

19  sole discretion of the United States.  It is understood that,

20  should the United States determine that the defendant has not

21  provided substantial assistance in any investigation or

22  prosecution of the packaged-ice industry, or should the United

23  States determine that the defendant has violated any provision

24  of this plea agreement, such a determination will release the

25  United States from any obligation to file a motion pursuant to

1   United States Section 5K1.1, but will not entitle the defendant

2   to withdraw his guilty plea once it has been entered.  The

3   defendant further understands that, whether or not the United

4   States files a motion pursuant to United States Sentencing

5   Guideline 5K1.1, the sentence to be imposed on him remains

6   within the sole discretion of the sentencing judge.  To enable

7   the Court to have the benefit of all the relevant sentencing

8   information, the United States may request that sentencing be

9   postponed until his cooperation is complete.

10      Paragraph 11.  The parties agree that they are not aware at

11  this time of any aggravating or mitigating circumstances of a

12  kind, or to a degree, not adequately taken into consideration

13  by the United States Sentencing Commission in formulating the

14  Sentencing Guidelines justifying a departure pursuant to United

15  States Sentencing Guideline Section 5K2.0.

16      Paragraph 12.  In light of the availability of civil causes

17  of actions available pursuant to 15, United States Code,

18  Section 15, the United States agrees it will not seek a

19  restitution order for the offense charged in the Information.

20      Paragraph 13.  The defendant understands that the Court

21  will order him to pay a $100 special assessment pursuant to 18

22  U.S.C. Section 3013(a)(2)(A) in addition to any fine imposed.

23      Paragraph 14.  The defendant understands that, as provided

24  in Federal Rules of Criminal Procedure 11(c)(3)(B), if the

25  Court does not impose a sentence consistent with either party's

1  sentencing recommendation, he nevertheless has no right to

2  withdraw his plea of guilty.

3      The Defendant's Cooperation.

4      Paragraph 15.  The defendant will cooperate fully and

5  truthfully with the United States in the prosecution of this

6  case, the conduct of the current federal investigation of

7  violations of federal antitrust and related criminal laws

8  involving the sale of packaged ice in the United States, and

9  any other federal investigation resulting therefrom, and any

10 litigation or other proceeding arising or resulting from any

11 such investigation to which the United States is a party.  The

12 ongoing, full, and truthful cooperation of the defendant shall

13 include, but not be limited to:

14      (a) producing all non-privileged documents, including

15 claimed personal documents, and other materials, wherever

16 located, in the possession, custody, or control of the

17 defendant, requested by attorneys and agents of the United

18 States;

19      (b) making himself available for interviews, not at the

20 expense of the United States, upon the request of attorneys and

21 agents of the United States;

22      (c) responding fully and truthfully to all inquiries of the

23 United States in connection with any federal proceeding,

24 without falsely implicating any person or intentionally

25 withholding any information, subject to the penalties of making

1   false statement, 18 U.S.C. Section 1001, and obstruction of

2   justice, 18 U.S.C. Section 1503, et sequentes;

3       (d) otherwise voluntarily providing the United States with

4   any non-privileged material or information not requested in (a)

5   through (c) of this paragraph, that he may have that is related

6   to any federal proceeding; and

7       (e) when called upon to do so by the United States in

8   connection with any federal proceeding, testifying in grand

9   jury, trial, and other judicial proceedings, fully, truthfully,

10  and under oath, subject to the penalties of perjury, making

11  false statements or declarations in grand jury or court

12  proceedings, contempt, and obstruction of justice.

13      The Government's Agreement.

14      Section 16.  Subject to the full, truthful, and continuing

15  cooperation of the defendant, as described in paragraph 15 of

16  this plea agreement, and upon the Court's acceptance of the

17  guilty plea called for by this plea agreement and imposition of

18  this sentence as provided by the Court, the United States will

19  not bring further criminal charges against the defendant for

20  any act or offense committed before the date of this plea

21  agreement that was undertaken in furtherance of an attempted or

22  completed antitrust conspiracy involving the sale of packaged

23  ice or undertaken in connection with any investigation of such

24  a conspiracy, the "relevant offense."  The non-prosecution

25  terms of this paragraph do not apply to civil matters of any

1    kind, to any violation of federal tax or security laws, or to

2    any crime of violence.

3         Paragraph 17.  The defendant understands that he may be

4    subject to administrative action by federal or state agencies

5    other than the United States Department of Justice, Antitrust

6    Division, based upon the conviction resulting from this plea

7    agreement, and that this plea agreement in no way controls

8    whatever action, if any, other agencies may take.  However, the

9    United States agrees that, if requested, it will advise the

10   appropriate officials of any governmental agency considering

11   such administrative action of the fact, manner, and extent of

12   cooperation of the defendant as a matter for that agency to

13   consider before determining what administrative action, if any,

14   to take.

15        Representation By Counsel.

16        Paragraph 18.  The defendant has reviewed all legal and

17   factual aspects of this case with his attorney and is fully

18   satisfied with his attorney's legal representation.  The

19   defendant has thoroughly reviewed this plea agreement with his

20   attorney and has received satisfactory explanations from his

21   attorney concerning each paragraph of this plea agreement and

22   alternatives available to defendant other than entering into

23   this plea agreement.  After conferring with his attorney and

24   considering all available alternatives, the defendant has made

25   a knowing and voluntary decision to enter into this plea

1    agreement.

2        Voluntary Plea.

3        The defendant's decision to enter into this plea agreement

4    and to tender a plea of guilty is freely and voluntarily made,

5    is not the result of force, threats, assurances, promises or

6    representations other than the representations contained in

7    this plea agreement.  The United States has made no promises or

8    representations to the defendant as to whether the Court will

9    accept or reject the representations contained within this plea

10   agreement.

11       Violation Of Plea Agreement.

12       Paragraph 20.  The defendant agrees that, should the United

13   States determine in good faith, during the period that any

14   federal proceeding is pending, that the defendant has failed to

15   provide full and truthful cooperation, as described in

16   paragraph 15 of this plea agreement, or has otherwise violated

17   any provision of this plea agreement, the United States will

18   notify the defendant or his counsel in writing by personal or

19   overnight delivery or facsimile transmission and may also

20   notify his counsel by telephone of its intention to void any of

21   its obligations under this plea agreement, except its

22   obligations under this paragraph, and the defendant shall be

23   subject to prosecution for any federal crime of which the

24   United States has knowledge including, but not limited to, the

25   substantive offenses related to the investigations resulting in

1 the plea agreement.  The defendant agrees that, in the event

2 that the United States is released from its obligations under

3 this plea agreement and brings criminal charges against the

4 defendant for any relevant offense, the statute of limitations

5 period for such offense shall be tolled for the period between

6 the date of the signing of this plea agreement and six months

7 after the date the United States gave notice of its intent to

8 void its obligations under this plea agreement.

9     Paragraph 21.  The defendant understands and agrees that in

10 any further prosecution of him resulting from the release of

11 the United States from its obligations under this plea

12 agreement based on defendant's violation of this plea

13 agreement, any documents, statements, information, testimony,

14 or evidence provided by him to attorneys or agents of the

15 United States, federal grand juries, or courts, and any leads

16 derived therefrom, may be used against him in any such further

17 prosecution.  In addition, the defendant unconditionally waives

18 his right to challenge the use of such evidence in any such

19 further prosecution, notwithstanding the protections of Federal

20 Rule of Evidence 410.

21     The Entirety Of The Agreement.

22     Paragraph 22.  This plea agreement constitutes the entire

23 agreement between the United States and the defendant

24 concerning the disposition of the criminal charge in this case.

25 This plea agreement cannot be modified except in writing,

1   signed by the United States and the defendant.

2        Paragraph 23.  The undersigned attorneys for the United

3   States have been authorized by the Attorney General of the

4   United States to enter this plea agreement on behalf of the

5   United States.

6        The plea agreement is signed, is dated September 11th,

7   2009.  It is signed by Mr. Larson and Mr. Michael and as well

8   by me.

9              THE COURT:  Mr. Larson, is that your signature at the

10  end of the plea agreement?

11             THE DEFENDANT:  Yes, it is.

12             THE COURT:  Would you read me the last -- or the

13  paragraph 22 of the plea agreement.

14             THE DEFENDANT:  "This plea agreement constitutes the

15  entire agreement between the United States and the defendant

16  concerning the disposition of the criminal charge in this case.

17  This plea agreement cannot be modified except in writing,

18  signed by the United States and the defendant."

19             THE COURT:  The agreements that you've made in this

20  plea agreement, do you have any questions about them?

21             THE DEFENDANT:  No, sir, I don't.

22             THE COURT:  And you're under oath.  Do you agree,

23  then, that your agreements in this plea agreement are true and

24  correct?

25             THE DEFENDANT:  Yes, they are.

```
 1              THE COURT:  Aside from the plea agreement, has anyone
 2    made any promise to you of any kind that induced you to plead
 3    guilty?
 4              THE DEFENDANT:  No, they did not.
 5              THE COURT:  Aside from the plea agreement, which we've
 6    been discussing, has any agent or officer of the United States
 7    or any government, has any lawyer, any lawyer, has anyone
 8    promised or even suggested that you'll receive a lighter
 9    sentence or any other form of leniency if you plead guilty?
10              THE DEFENDANT:  No, they have not.
11              THE COURT:  Have any threats been made that induced
12    you to plead guilty?
13              THE DEFENDANT:  No, sir.
14              THE COURT:  Is it fair, then, for me to believe that
15    this decision of yours to plead guilty is your voluntary act
16    and deed?
17              THE DEFENDANT:  Yes, it is.
18              THE COURT:  Do you have any questions at this time?
19              THE DEFENDANT:  No, sir, I don't.
20              THE COURT:  Is it fair for me to believe, then, that
21    you're pleading guilty here today with a full understanding of
22    the nature of the charge against you and the consequences of
23    that plea of guilty?
24              THE DEFENDANT:  Yes, that's true.
25              THE COURT:  Would you turn to page 7 of the -- or no,
```

1   it's 3 of the plea agreement, please.

2        Now, would you paraphrase what happened here.  We've

3   already gone through the record that you admit these facts to

4   be the truth that's set forth here in the fourth paragraph.  Do

5   you see?

6               THE DEFENDANT:  Yes.

7               THE COURT:  Now, would you tell me what happened.

8               THE DEFENDANT:  Yes, sir.  I was aware of

9   conversations between Arctic employees and competitors

10  regarding customers that either we serviced or they serviced in

11  the Michigan marketplace.  And customers would contact us

12  either regarding the competitor's service and ask us to come

13  see them, to inquire about servicing.

14       There were times that Arctic employees would contact the

15  competitor and give them a heads-up and give them a

16  notification that a customer called and give them a timeline,

17  or give them one or two weeks to say, "Here.  This customer

18  called.  Here's the issue.  Fix it or we're going to take the

19  customer."

20       I was aware of those conversations.  I participated in one

21  of those conversations.  I shared with my -- with senior

22  management at Artic Glacier that these types of conversations

23  were taking place.

24               THE COURT:  And did at least one of the agreements

25  occur down here in Cincinnati?

1        THE DEFENDANT:  I believe it was by phone with someone

2   here in Cincinnati.

3        THE COURT:  Cincinnati was involved?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Mr. Michael, has your investigation into

6   the facts of this case established the truth of the factual

7   basis for the offense charged?

8        MR. MICHAEL:  Yes, Judge.

9        THE COURT:  Mr. Larson, is it fair, then, for me to

10  believe that you're pleading guilty here today because you are,

11  in fact, guilty of a violation of the Sherman Antitrust Act,

12  Section 1?

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  Mr. Culum, is there anything further that

15  I should discuss with the defendant before I make my findings

16  in the matter?

17       MR. CULUM:  No, Your Honor.  We just would like the

18  Court to know that he has been cooperating, we fully expect him

19  to continue to cooperate, and we have nothing further to say.

20  But he has been very cooperative and has been very forthright

21  with his participation and acknowledgment of the conduct that

22  he was involved in.

23       THE COURT:  Mr. Michael, anything you wish the Court

24  to discuss with the defendant or you wish to put on the record

25  before I make my findings?

1          MR. MICHAEL:  No, Judge.  I believe Mr. Larson fully

2     understands what's going on.  I've discussed all of the

3     relevant sections of the plea agreement with him.  We have

4     provided to him all of the statutory cites contained within the

5     plea agreement and gone over all of those.  It's my

6     understanding that he fully appreciates his actions today, as

7     well as his cooperation with the Department of Justice that has

8     occurred in the past and is anticipated to occur in the future.

9          THE COURT:  Mr. Larson, any questions at this time?

10         THE DEFENDANT:  No, sir.

11         THE COURT:  The trial judge has observed the

12    appearance and responsiveness of Mr. Larson, the defendant, in

13    giving his answers to the questions asked.  Based on such

14    observation and the answers given, the trial judge is satisfied

15    that the defendant is in full possession of his faculties.  He

16    is not suffering from any apparent physical or mental illness.

17    He is not under the influence of narcotics or alcohol.  He

18    understands that Title 18, Section 3553 applies to his case and

19    will be determinative of the sentence in his case that is to be

20    sufficient but not greater than necessary to accomplish the

21    purposes set forth by Congress in that section.  He understands

22    that the Sentencing Guidelines are an important element in that

23    determination but they are advisory only, and the Court may

24    sentence the defendant either greater than or less than those

25    Guideline determinations.

1    He understands the proceeding in which he is engaged.  He

2  understands the nature and meaning of the charge and the

3  consequences of his plea of guilty, and he is aware of all plea

4  negotiations undertaken on his behalf.

5    Do you have any questions about any of these findings?

6       THE DEFENDANT:  No, sir.

7       THE COURT:  The trial judge therefore finds that the

8  plea has been made voluntarily with understanding of the nature

9  of the charge and the consequence of such plea.  I will accept

10  your plea of guilty and enter a judgment of guilty to the

11  charge conspiracy to restrain trade, in violation of 15, United

12  States Code, Section 1, the Sherman Antitrust Act.

13    The matter will be referred to the United States Department

14  of Probation for a presentence investigation and report.  The

15  Court will take the plea agreement under advisement.  The Court

16  wishes to particularly point out the agreement not to seek

17  restitution in this matter.  That is a determination that the

18  Court will take under advisement and consider at the time of

19  the sentencing to see whether it is impractical to order

20  restitution in this case.  So I want you to understand that.

21       MR. CULUM:  Your Honor, may I comment on that?

22       THE COURT:  Yes.

23       MR. CULUM:  I think you're aware, Your Honor, that

24  there is an ongoing civil litigation among the victims of the

25  potential crime and some of the corporate defendants, ongoing

1  in the Eastern District of Michigan.  And I can get you the

2  cite, but there's an ongoing civil case trying to establish

3  what the proper restitution or recompense to the victims should

4  occur.  So I wanted to make you aware of that.

5          THE COURT:  I, of course, have been aware of that, and

6  I still stand on just what I said.  If anybody is curious, I do

7  not accept plea agreements until I am satisfied they're proper.

8  I think I pointed that out here.

9          MR. CULUM:  Yes.

10          MR. MICHAEL:  Yes, Judge.

11          MR. CULUM:  Yes, Your Honor.

12          THE COURT:  All right.  And hopefully we're always

13  reasonable, but that is not my job here.  It's to be

14  sufficient, not reasonable.

15      The matter will be set for sentencing for Wednesday,

16  February the 3rd, at 10:00 AM, and, of course, the year is

17  2010.  February 3rd, 2010, at 10:00 AM.

18      The probation department will provide a timeline for the

19  collection of information.  It's designed to have the

20  information as complete as possible by the time of that

21  sentencing date, in fact, at least ten days before that

22  sentencing date, and so it is necessary that we follow along.

23      If, because of the complexities of the situation that we're

24  facing, if there are additional problems and it's already been

25  noted in the plea agreement, the Court will listen to reason,

 1    not that I'll be reasonable, but I'll listen to reason.  And

 2    the purpose of that is so that, Mr. Larson, you and I can have

 3    all the information on the table that we can consider so that I

 4    can impose a just sentence in your case that is sufficient but

 5    not greater than necessary.  So your cooperation, which you've

 6    already offered willingly to the United States, please offer

 7    the same cooperation to the probation officer, which happens to

 8    be part of the United States.

 9              THE DEFENDANT:  Absolutely.

10              THE COURT:  The matter is before the Court now on the

11    establishment of a bond in this case.  I have before me the

12    report of the pretrial services.  Has the United States

13    received a copy of that report?

14              MR. CULUM:  Yes, Your Honor.

15              THE COURT:  And has the defense received a copy of the

16    report?

17              MR. MICHAEL:  We have, Judge.  We've read through it.

18    It's completely accurate except for one correction concerning

19    Mr. Larson's wife's maiden name.

20              THE COURT:  Thank you.

21              MR. MICHAEL:  Other than that, the substantive

22    information is accurate, Judge.

23              THE COURT:  And what is that correction?

24              MR. MICHAEL:  It is "Strand" as opposed to "Straub."

25              THE COURT:  Strand?

1           MR. MICHAEL:  Strand, yes, Judge.

2           THE COURT:  Have you had a chance to read through it

3    too, Mr. Larson?

4           THE DEFENDANT:  Yes, sir, I have.

5           THE COURT:  And you agree with the accuracy?

6           THE DEFENDANT:  Yes.

7           THE COURT:  The Court will accept the recommendation,

8    hearing no objection.

9           MR. CULUM:  No objection, Judge.

10          THE COURT:  Since you already agreed to it in the plea

11   agreement --

12          MR. CULUM:  Right.

13          THE COURT:  -- but I give you that opportunity.

14      The Court will establish the bond in the case and will

15   establish the conditions, and the conditions while you're on

16   bond are these, Mr. Larson: .

17      That you shall not violate any federal, state or local law

18   while on release, that you immediately advise the Court,

19   defense counsel, and the U.S. Attorney in writing before any

20   change of address or telephone number, and that you appear in

21   court as required and surrender to serve any sentence imposed,

22   that you promise to appear in court as required and surrender

23   to serve any sentence imposed, that you surrender any passport

24   to the Clerk of Courts, that you obtain no new passport, that

25   you refrain from possessing a firearm, destructive device or

1    other dangerous weapon, you refrain from any excessive use of

2    alcohol, you refrain from the unlawful possession of narcotic

3    drug or other controlled substances unless prescribed by a

4    licensed medical practitioner.  And the tangible matters that

5    must be complied with today is turning the passport in.

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  I will hand you a copy of the bond.  It

8    also has in there the advice of penalties and sanctions.  I

9    will give that to you at this time and Mr. Michael will go over

10   them with you.  And if you accept them and you understand what

11   you're dealing with, why, then we'll proceed.

12       (Mr. Michael and the defendant confer privately.)

13             MR. MICHAEL:  Your Honor, for the record, Mr. Larson

14   has gone over it and signed the form.

15             THE COURT:  Mr. Larson, I have in my hand the

16   acknowledgment of the defendant to the advice and penalty

17   sections on the bond.  Is that your signature?

18             THE DEFENDANT:  Yes, sir, it is.

19             THE COURT:  And you accept the conditions of the bond

20   that I have imposed upon you?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Do you have any questions at this time?

23             THE DEFENDANT:  No, sir, I don't.

24             THE COURT:  Does the United States have anything

25   further they wish to add to the proceedings?

1        MR. CULUM:  No, Your Honor.

2        THE COURT:  Mr. Michael?

3        MR. MICHAEL:  No, Judge.  Thank you.

4        THE COURT:  Any questions?

5        THE DEFENDANT:  No.

6        THE COURT:  I'll release the defendant after

7   processing.  The matter is continued until February the 3rd at

8   10:00 o'clock, 2010.

9     Is there anything further from the United States?

10       MR. CULUM:  No, Your Honor.

11       THE COURT:  Anything further?

12       MR. MICHAEL:  Just to alert the Court, we have Mr.

13   Larson's passport.  We'll turn that in to the Clerk's office.

14   And he's been processed by the marshals prior to court this

15   morning.

16       THE COURT:  Have a safe trip back home.

17       MR. MICHAEL:  Thank you very much.

18       THE DEFENDANT:  Thank you.

19       COURTROOM DEPUTY:  All rise.  This honorable court is

20   now in recess.

21     (Proceedings concluded at 11:10 AM.)

22                          - - -

23

24

25

1       C E R T I F I C A T E

2   I, Luke T. Lavin, RDR, CRR, the undersigned, certify

3 that the foregoing is a correct transcript from the record of

4 proceedings in the above-entitled matter.

5

6         s/Luke T. Lavin
         Luke T. Lavin, RDR, CRR

7         Official Court Reporter

8       - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25